J. M. Ralston, Administrator c. t. a. of the Estate of Nancy Ramsey, deceased, *v.* Joel Truesdell, Administrator d. b. n. c. t. a. of Joseph Alexander, deceased, J. C. Roney, D. G. Roney and J. B. Chambers, Appellants.

*Wills—Estate tail—" Heirs of the body "—Executory devise—Life estate.*

Testator, who died in 1834, after having "bequeathed" a life estate in land to his wife, directed as follows: "I leave and bequeath unto my granddaughter N. all the real property that my wife enjoys during her life and at my wife's death I bequeath the same property that she held during her life to N. and to the heirs of her body; but if she should die and leave no child or children then in such a case the said property shall be sold to the best advantage and equally divided among my other legatees and their heirs." *Held,* (1) that testator used both the words "heirs of her body" and "child or children" in their legal sense, and that they must be so interpreted; (2) that testator's purpose was to give in the first instance, an estate tail, to be reduced to a life estate on the happening of a certain contingency, to wit: the death of N. before she married, and had a "child or children;" (3) that N. had an estate tail and "the other legatees and their heirs" took an executory estate in fee; (4) that N. dying leaving no

child or children, the estate tail by the happening of that contingency was to be abridged, and the estate in fee vested in the " other legatees and their heirs ; " (5) that the testator did not intend the devise " to his other legatees and their heirs " only in the event of the death of N., without children during his life, but he referred to an event that would take place subsequent to his death ; (6) that N. having executed a deed under the act of January 16, 1799, to bar the entail, also by such deed barred the executory devise given to the other legatees of the testator.

Argued Oct. 20, 1896. Appeal, No. 173, Oct. T., 1896, by defendants, from judgment of C. P. Washington Co., May T., 1896, No. 129, on verdict for plaintiff. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Ejectment for a tract of land in Washington county. Before McILVAINE, P. J.

Joseph Alexander, late of the county of Washington and state of Pennsylvania, died on or about September 8, 1834, leaving a will dated August 12, 1833, and republished and acknowledged by the said testator on September 8, 1834.

Testator died seized of an estate in land which by his will above referred to was devised to different persons. To one of them, Nancy Ramsey, a granddaughter, he gave the land in dispute, to take effect after the death of his widow, to whom he gave it during her natural life. The portion of the will under which the plaintiff claims is set out in the opinion of the court.

The widow of said testator died prior to June 20, 1881. Nancy Ramsey on the 20th day of June, 1881, executed and delivered to James I. Brownson, Jr., a deed for the real estate devised to her in said will, and which is the land in dispute ; in which deed is set out that the said deed was executed " for the purpose of debarring and destroying, and with the intention thereby to debar and destroy, all estate tail, possession, remainder or reversion that the said Nancy Ramsey has or is entitled to in all and singular the lands and tenements thereinafter described and mentioned, and in pursuance and by virtue of an act of assembly of the said commonwealth in such cases made and provided."

On the said 20th day of June, 1881, James I. Brownson, Jr., reconveyed the said real estate to the said Nancy Ramsey, by deed.

Nancy Ramsey died February 7, 1895, testate. Her will, dated the    day of    18  , is recorded in the office of the register of wills in will book No.   , page    , and letters of administration c. t. a. issued to J. M. Ralston on the 19th day of October, 1895.

J. C. Roney, D. G. Roney and J. B. Chambers are in possession of the land in dispute, and Joel Truesdell, who is administrator d. b. n. c. t. a. of the estate of Joseph Alexander, deceased, has been entered of record as one of the defendants.

Upon the trial of the case, the defendants contended that, under the will of Joseph Alexander, Nancy Ramsey took only a life estate in the land devised to her.

The court charged as follows:

This is an action of ejectment brought by the plaintiff in this case against the defendants to recover a tract of land in this county, and the right of the plaintiff to recover is a question of law, there being no dispute whatever in regard to the facts in the case; and that question of law is, whether or not Nancy Ramsey, under the will of Joseph Alexander, which was read in your hearing, took a life estate, or whether she took an estate in fee simple. If she took a life estate, of course at her death all interest that she had in that land terminated, and any interest that anybody pretends to hold under any conveyance from her, either by deed or will, would be invalid; while on the other hand, if she took a fee simple estate under that will, then any conveyance which she made, either by will or deed, would be good; and upon that question of law the case turns, solely. The court desires, and the counsel on both sides also, that this question should be more fully discussed at our argument court than it could be here to-day, and therefore we intend to give you pro forma instructions as to this question of law, reserving it for further consideration, with the right to enter judgment contrary to your verdict if we find the law is such as to require us to do so. For the present we instruct you, pro forma, that Nancy Ramsey took a fee simple estate, and that your verdict in this case, therefore, must be for the plaintiff; and we reserve the question of law that we have indicated for further consideration, with the right to enter a judgment in favor of the defend-

ants, notwithstanding your verdict, if we conclude that Nancy Ramsey had only a life estate.

Verdict for plaintiff.

McILVAINE, P. J., subsequently filed the following opinion on the question of law reserved:

Joseph Alexander "left and bequeathed" to his wife for life certain real estate including the land in dispute in this action. In his will, after thus providing for his wife, and making various bequests to his children, he made a devise in the language following:

"I leave and bequeath unto my granddaughter Nancy Ramsey all the real property that my wife enjoys during her life and at my wife's death I bequeath the same property that she held during her life to Nancy Ramsey and to the heirs of her body; but if she should die and leave no child or children then in such a case the said property shall be sold to the best advantage and equally divided among my other legatees and their heirs."

The question reserved and now for decision is, did Nancy Ramsey, who died after the testator and his widow, unmarried, leaving no child nor children nor lineal descendant, have at the time of her death, under this provision of her grandfather's will, a life estate or an estate tail in the lands devised to her? If she had only a life estate, then our instruction to the jury to find for the plaintiff was wrong; but if she had an estate tail, then our instruction was right, as her estate had been enlarged into a fee simple, and the right of possession at the time suit was brought was in the plaintiff.

The language of the testator, to wit: "I bequeath the same property" (that is, the property his widow is to hold for life), "to Nancy Ramsey and to the heirs of her body," creates an estate tail. The words used are strictly and technically words of limitation. But these words follow, "but if she die and leave no child or children then in such a case the said property shall be sold to the best advantage and equally divided among my other legatees and their heirs,"—and they must be taken with what precedes. It is argued by the counsel for the defendants that as the words "child or children" are words of purchase therefore the words "heirs of her body" were used by

the testator in the same sense,—that he purposely used the words "child or children" in the second clause of this paragraph to explain in what sense he used the words "heirs of her body" in the first clause of the paragraph. And that the whole paragraph correctly construed should read, "I leave and bequeath the said property to Nancy Ramsey and to the heirs of her body, but if she should die and leave no heirs of her body, by that I mean no child or children, then in such case, that is, at her death, the said property shall be sold," etc. This construction would give to Nancy Ramsey a life estate which would terminate at her death, she having died "unmarried and without child or children or other lineal descendant" as shown by the admissions of record.

It is contended, however, by the counsel for the plaintiff that no such qualifying effect can be given to the words "child or children," but that as the testator first used the words "heirs of her body" it is rather to be held that he used the words "child or children" in the same sense,—that is, as words of limitation and not of purchase.

If it were necessary to choose between these two interpretations, the former would be adopted, as "the nature of a devise over is always to be looked at to ascertain whether a definite or indefinite failure of issue was intended;" and the words "child or children" would be taken as explanatory of what the testator meant by the words "heirs of her body." But if we can give to the words "heirs of her body" and to the words "child or children" their technical meaning without one modifying the other, and allow both to be thus interpreted, we must do so. The presumption is that the testator intended that all the words he used should be given their legal signification. And it is only where an intention to the contrary clearly appears that a modified meaning can be given to such words as "issue," "heirs of his body" and "children."

In our opinion the testator used both the words "heirs of her body" and "child or children" in their legal sense, and that they must be so interpreted. His purpose was to give, in the first instance, an estate tail, to be reduced to a life estate on the happening of a certain contingency, to wit: the death of the first taker before she married and had a "child or children." The happening of the contingency,—the death of the first taker

leaving "no child or children" was to abridge the estate tail or reduce it to a life estate and make effectual the devise over to "the other legatees and their heirs." Nancy Ramsey had an estate tail, and "the other legatees and their heirs" took an executory estate in fee. The executory estate was limited, and was to take effect, after a definite failure of issue of the first taker. If there was no such failure, then the estate tail was to remain as though there had been no limitation over, but if there was such a failure then the estate tail was to be reduced to a life estate and the fee was to vest in the executory devisees. Nancy Ramsey dying leaving no child or children the estate tail, by the happening of that contingency, was to be abridged, and the estate in fee vested in the "other legatees and their heirs:" Ingersoll's Appeal, 86 Pa. 245; Taylor v. Taylor, 63 Pa. 484.

. That the event of a person dying without leaving children to survive them can be made a contingency upon which an executory devise may be limited over, as well as the happening of any other event, cannot be questioned: 2 Washburn, Real Property, 349.

But granting that an estate tail was given to Nancy Ramsey to be abridged upon the happening of a certain contingency, as we have held, it is argued that that contingency did not happen. On the authority of King v. Frick, 135 Pa. 575, it is contended that the testator intended the devise over "to his other legatees and their heirs" only in the event of the death of the first taker, Nancy Ramsey, without children, during his life. We think, however, that that case can be distinguished from the one in hand. As was said in Jessup v. Smuck, 16 Pa. 339, "the testator was providing for the disposition of his estate after his decease, and must be supposed to refer to events and their occurrence in time subsequent to his death." In the disposition made he provided that Nancy Ramsey should not come into the enjoyment of her estate until after the death of his widow, and he expected his widow to live longer than he did, for he gave her a life estate in the very land devised to Nancy Ramsey. The rule invoked by the counsel for the plaintiff is stated by Powell in these words: "But in cases of *immediate* gifts, it is generally true that·a bequest over, in the event of the death of the preceding legatee, refers to that event occur-

ring in the lifetime of the testator; yet this construction is only made *ex necessitate rei* from the absence of any other period to which the words may be referred, as a testator is not supposed to contemplate the event of himself surviving the object of his bounty : " 2 Powell on Devises, 763–765.   In Jessup v. Smuck, supra, Mr. Justice CHAMBERS says : " In the cases which limit the death to the testator's lifetime, it is admitted that it is adopted from necessity, in aid of what was considered the general intent of the testator, and was not applied where the first taker is referred to or treated as living at a period subsequent to the death of the testator."

Joseph Alexander, after giving a life estate to his wife, provided that " at my wife's death I bequeath the same property to Nancy Ramsey," etc.   No immediate gift was made to Nancy Ramsey.   She must wait, not only until after the death of the testator, but until after the death of his widow, the life tenant, before she receives anything.   The testator in making the devise to Nancy Ramsey " referred to an event that would take place subsequent to his death," to wit: the death of his wife, who was made a life tenant of the very property devised. Again, he provided for a sale of the property and a distribution among persons then in being,—" his other legatees,"—and this provision for a sale, which, of course, would be after his death, is connected as to time with the death of Nancy Ramsey; " if she die leaving no child or children *then* in such a case (on the happening of such event) the said property shall be sold and divided equally among my other legatees."

Taking alone, then, the will of Joseph Alexander and the fact that Nancy Ramsey died leaving no child nor children, we would say that the estate tail terminated at her death and the executory estate devised to the " other legatees and their heirs " took effect.   But Nancy Ramsey, on the 20th day of June, 1881, executed the deed to Jas. I. Brownson, Jr., Esq., which was offered in evidence, and Jas. I. Brownson, Jr., Esq., reconveyed the property conveyed to him back to her and her heirs and assigns.   She died seized of the property now in dispute, claiming to hold a fee-simple title thereto under the deed received from Mr. Brownson.   These deeds were executed in accordance with the provisions of the act of assembly entitled " An act to facilitate the barring of entail," and the question now is, was

the executory estate as well as the estate tail barred by this deed executed under the act of 1799. In Taylor v. Taylor, 63 Pa. 485, Mr. Justice Sharswood says, " An estate tail may no doubt be subject to an executory devise over on some condition or event to take effect in abridgment or derogation of it; but such an executory devise can be destroyed by a common recovery suffered by the tenant in tail which enlarges his estate into a fee and excludes all subsequent limitations, whether in remainder or by the way of springing use or executory devise. . . . . A devise over after an estate tail on a definite failure of issue is not an executory devise but a remainder, for it takes effect, not in derogation or abridgment of the preceding estate, but on its regular determination, though only in the event of the termination of the estate upon the death of the tenant. . . . There is however not much importance in the distinction as to the limitation over after a definite failure of the issue of tenant in tail, since, call it what you will, executory devise, or vested or contingent remainder, it can be barred by a common recovery or by deed duly executed to dock the entail under the act of assembly of January 16, 1799 : " 3 Smith, 388.

" If there be an estate tail with reversion in fee, and this reversion in fee is disposed of by way of executory devise, the interest under the executory devise will not be protected. It may be barred by the common recovery of the tenant in tail; for as he may bar the reversion in the fee, he may as a consequence bar all estates and interest derived out of the reversion : " 2 Preston's Abstract, 121.

" A devise to A. and the heirs of his body, and if A. die under the age of twenty-two, then the lands shall immediately belong to B. in fee; if A. bars the entail according to law during his life, the executory interest will also be barred. B.'s interest could not be saved as a remainder because it was to come in in abridgment of A.'s estate tail and not at its regular determination : " 2 Washburn, R. P. p. 356.

" An executory devise is generally indestructible by any alteration in the estate out of or after which it is limited, but if it is limited on an estate tail, the tenant in tail can bar it, as well as the entail, by common recovery or by deed enrolled, etc., where such deed is by statute given the force and effect of a common recovery : " 1 Bouvier's Dictionary, 629.

From these authorities it will appear that Nancy Ramsey while holding the land in dispute as tenant in tail, by her deed of June 20, 1881, barred not only the entail but the executory estate given to the " other legatees " of the testator, and which they would have taken by the abridgment of the estate tail upon the death of Nancy Ramsey leaving no child or children, had not such deed been executed.

In conclusion, our opinion on the question of law reserved may be briefly stated as follows :

1. The testator used the words " heirs of her body " and the words " no child or children " in their legal sense, and not the one set of words as explanatory of the other.

2. The first devise was to Nancy Ramsey and the heirs of her body,—an estate tail ; the devise over was to the testator's " other legatees " (previously named and all in being) " and their heirs," an estate in fee. The devise over was to take effect and the estate tail to be abridged on the happening of a contingency, to wit ; the death of Nancy Ramsey " leaving no child or children ; " Nancy Ramsey died leaving no child or children ; therefore, taking the will as the only evidence of title, the land in dispute would belong to the " other legatees " (of the testator) " and their heirs."

3. The tenant in tail having executed the deed of June 20, 1881, in due form of law to bar the entail, not only barred the entail but barred the devise over, and the deed to her from Jas. I. Brownson, Jr., Esq., vested in her a fee simple estate, which by her death and the probate of her will was, at the time of bringing this suit, vested in the plaintiff, and therefore judgment must be entered on the verdict of the jury as returned upon the question of law reserved.

And now, September 1, 1896, judgment entered on the verdict of the jury in favor of the plaintiff and against the defendants for the land in dispute and described in the plaintiff's writ, 6 cents damage and costs.

*Error assigned* was in entering judgment for plaintiff on the question of law reserved.

*R. W. Irwin,* with him *J. M. Dickson,* for appellants.—All the words of a will must stand in their most usual meaning,

without regard to their etymological, their abstract or technical meaning.

The last clause shall govern where there is doubt as to the meaning; or shall be used to qualify and explain the premises.

Where an indefinite failure of issue is intended an estate tail is not created: Findley v. Riddle, 3 Binn. 166; Carter v. McMichael, 10 S. & R. 431; Walker v. Milligan, 45 Pa. 178; Wynn v. Story, 38 Pa. 166; Taylor v. Taylor, 63 Pa. 487; Bedford's App., 40 Pa. 18; Hill v. Hill, 74 Pa. 173.

The time the devise over is to take effect, or the contingency upon which the estate is limited, is important as determining whether a definite or an indefinite failure of issue is intended; and also what estate the first taker took: Snyder's App., 95 Pa. 174; Miller's Est., 145 Pa. 561.

The word " leaving " or " leave," as applied and explained in Gerhard's Est., 160 Pa. 259, is sufficient to confine the time of the termination of the estate to the death of the first taker.

The use of the word children indicates that the testator intended a failure of children and not a failure of issue generally. The testator having directed a sale of the land and a distribution, must have intended this to take effect on the death of the first taker.

The distinction between the failure of issue generally, and children, or a failure at a definite time, is that which determines the question of the extent of the estate: Eichelberger v. Barnitz, 9 Watts, 450; Ray v. Alexander, 146 Pa. 242.

*Albert S. Sprowls*, with him *M. L. A.* and *B. E. McCrackens* and *J. Q. McGiffen*, for appellee.—We insist that the expression, " but if she should die and leave no child or children then in such a case said property shall be sold," was not intended by the testator to qualify the estate which he had already given to Nancy Ramsey and the heirs of her body, but that the testator intended the expression, " but if she should die and leave no child or children then in such a case," to be accepted in the sense in which he made use of the prior expression, " heirs of her body; " and that the words, " child or children," and " heirs of her body," were used to convey the same meaning: Auman v. Auman, 21 Pa. 347; Hiester v. Yerger, 166 Pa. 446; Criswell's App., 41 Pa. 288; Physick's App., 50 Pa. 128; Little's App., 117 Pa. 29.

Superadded words of limitations alone will not make " heirs of the body " words of purchase: Hawkins on Wills, 184; Jarman on Wills, 337; Criswell's App., 41 Pa. 291; Paxson v. Lefferts, 3 Rawle, 59; George v. Morgan, 16 Pa. 95; Grimes v. Shirk, 169 Pa. 85; 2 Jarman on Wills, 6th ed. p. 398.

Further, we contend that if another rule of construction were to be applied in this case, the result would be to give an estate tail to Nancy Ramsey. It is that where there is a devise over after the happening of a certain event, and no time is fixed for the occurrence of the contingency, it is held to be an event intended to take place in the lifetime of the testator: King v. Frick, 135 Pa. 575; Seibert v. Wise, 70 Pa. 147; Finney's App., 113 Pa. 11; Linn v. Alexander, 59 Pa. 47.

PER CURIAM, November 11, 1896:

The judgment in this case is affirmed on the opinion of the learned court below.